UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DEBRA BETH PHELPS,

                              Plaintiff,

v.                                                              1:15-CV-0499
                                                                (GTS)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                                      OF COUNSEL:

LAW OFFICES OF STEVEN R. DOLSON          STEVEN R. DOLSON, ESQ.
  Counsel for Plaintiff
126 North Salina Street, Suite 3B
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.               BENIL ABRAHAM, ESQ.
OFFICE OF REG'L GEN. COUNSEL– REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

        Currently before the Court, in this Social Security action filed by Debra Beth Phelps.

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on

the pleadings.  (Dkt. Nos. 10, 12.)  For the reasons set forth below, Plaintiff's motion for

judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is

granted.

## I.     RELEVANT BACKGROUND

### A.     Factual Background

Plaintiff was born on November 4, 1962.  Plaintiff has an associate degree in fashion buying and merchandising, and has past work as a waitress.  Generally, Plaintiff's alleged disability consists of impairments of the right knee, cervical spine, and lumbar spine; anxiety with panic; and post traumatic stress disorder ("PTSD").

### B.     Procedural History

On February 14, 2012, Plaintiff applied for Supplemental Security Income.  Plaintiff's application was initially denied on August 6, 2012, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  On August 6, 2013, Plaintiff appeared in a hearing before the ALJ, Arthur Patane.  (T. 26-43.)  On September 24, 2013, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 10-25.)  On March 3, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)

### C.     The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law.  (T. 15-21.)  First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 14, 2012, the alleged onset date.  (T. 15.)  Second, the ALJ found that Plaintiff's degenerative disc disease, osteoarthritis, dysthymic disorder, panic disorder, and PTSD are severe impairments, but that Plaintiff's sphincter of Oddi disease and history of opiate and benzodiazepine dependence are not severe impairments.  (*Id.*)  Third, the ALJ found that Plaintiff's severe impairments, alone or in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1.  (T. 16-17.)  Fourth, the ALJ

found that Plaintiff "has the residual functional capacity ["RFC"] to perform light work as defined in 20 CFR 416.967(b)[1] with occasional climbing of ramps and stairs, occasional balancing, stooping, kneeling, crouching, and crawling, no climbing of ropes/ladders/scaffolds, and with occasional contact with the public and occasional changes in workplace routines." (T. 17-20.) Fifth, the ALJ found that Plaintiff is unable to perform any past relevant work. (T. 20.) Sixth, and finally, the ALJ found that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. 20-21.)

### D.      The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff makes two arguments in support of her motion for judgement on the pleadings. First, Plaintiff argues that the ALJ committed reversible error by failing to apply the treating physician rule in weighing the opinion of treating physician, Venkateswar Voleti, M.D. (Dkt. No. 10, at 3-5 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ committed reversible error by failing to make a proper credibility determination. (*Id.*, at 5-7.)

Generally, Defendant argues that the ALJ properly considered the medical evidence of record, and the ALJ's RFC determination is supported by substantial evidence. (Dkt. No. 12, at 5-11 [Def.'s Mem. of Law].) Within this argument, Defendant argues that the ALJ's credibility determination is supported by substantial evidence. (*Id.*)

## II.      RELEVANT LEGAL STANDARD

### A.      Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906

---

[1]          Light work requires the abilities to sit for six hours, stand for two hours, and lift and carry up to ten pounds frequently during an eight-hour workday. 20 C.F.R. § 416.927(a); SSR 83-10, 1983 WL 31251 (1983).

F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the

[Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. § 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. Whether the ALJ Erred in Weighing the Medical Opinion Evidence in Determining the RFC

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 12, at 5-11 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

RFC is defined as

> what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir. 1999); 20 C.F.R. § 416.945(a). "In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work." *Domm v. Colvin*, 12-CV-6640, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 416.945[a][3]-[4]). The ALJ must consider medical opinions and facts, physical and mental abilities, non-severe impairments, and the plaintiff's subjective evidence of symptoms. 20 C.F.R. § 416.945(b)-(e). The ALJ must consider RFC assessments made by acceptable medical sources and may consider opinions from other sources to show how a claimant's impairments may affect his or her ability to work. 20 C.F.R. § 416.913(c)(d). Finally, an ALJ's RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Under the "treating physician's rule," controlling weight is afforded to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. § 416.927(c)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). Regulations require an ALJ to set forth his or her reasons for the weight afforded to a treating physician's opinion. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

When controlling weight is not afforded to the opinion of a treating physician, or when assessing a medical opinion from another source, the ALJ should consider the following factors to determine the proper weight to afford the opinion: (1) the source's examination or treatment relationship with the plaintiff, including the length, nature, and extent of the treatment relationship, (2) the opinion's supportability, (3) the opinion's consistency with the record as a whole, (4) the source's specialization, if any, and (5) other factors, such as the source's knowledge of disability programs and familiarity with the case record. 20 C.F.R. § 416.927(c); *Halloran*, 362 F.3d at 32 (listing regulatory factors).

Here, the ALJ determined that Plaintiff has the physical RFC to perform light work with occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs; and no climbing ropes, ladders, or scaffolds. (T. 17-20.) The Court finds that the ALJ's physical RFC determination is supported by substantial evidence, including the opinions of consultative physical examiner, Kautilya Puri, M.D., and State agency medical consultant Michael Perll, M.D. (T. 242-45, 266-72.) Moreover, the ALJ's assessment of the medical opinion evidence of record, including the opinion of treating physician, Venkateswar Voleti, M.D., is supported by substantial evidence. (T. 17-20.)

### i.  Consultative Examiner, Dr. Puri

On July 13, 2012, Dr. Puri diagnosed Plaintiff with osteoporosis, degenerative disc disease with multiple joint pains, arthritis associated with postoperative procedures and degenerative joint disease, and PTSD.  (T. 244.)  Dr. Puri opined that Plaintiff had mild limitations in squatting, no limitations in her gait or activities of daily living, and no objective limitations in communication, fine motor activity, or gross motor activity.  (T. 245.)

Upon examination, Dr. Puri observed that Plaintiff had a normal gait and a normal stance, and could stand on her heels and toes without difficulty.  (T. 243.)  Dr. Puri observed that Plaintiff's squat was markedly decreased, but she needed no help changing for the exam and was able to get on and off the exam table and rise from a chair without difficulty.  (*Id.*)  Examination of Plaintiff's spine showed a decreased range of motion, but there was no scoliosis, kyphosis, or abnormality in the thoracic spine.  (*Id.*)  Dr. Puri observed that Plaintiff had a full range of motion in her upper and lower extremities, except for her right knee which had a mildly decreased flexion and extension with some mild local tenderness.  (*Id.*)

Otherwise, Dr. Puri observed that Plaintiff's joints were stable and nontender, and there was no redness, heat, swelling, or effusion.  (*Id.*)  Dr. Puri further observed that Plaintiff's hand and finger dexterity were intact, and she had full grip strength bilaterally, as well as full strength in her upper and lower extremities.  (*Id.*)  Regarding Plaintiff's activities of daily living, Dr. Puri noted that Plaintiff could do some cleaning, laundry, shopping, and childcare, and could shower, bathe, and dress.  (*Id.*) Additionally, Dr. Puri noted that Plaintiff watches television, listens to the radio, reads, and goes out.  (*Id.*)

The ALJ afforded great weight to Dr. Puri's opinion in light of her clinical findings and Plaintiff's activities of daily living.  (T. 19.)  Moreover, the ALJ noted that Dr. Puri's opinion

was "not inconsistent" with other substantial evidence of record, including an August 2012 emergency room treatment report from Albany Memorial Hospital (indicating that Plaintiff had paraspinal lumbar tenderness, but was in no acute distress, had a normal gait, and had no lower extremity neurological deficits). (*Id.*) The Court finds that the ALJ's assessment of Dr. Puri's opinion is supported by substantial evidence for the following two reasons.

First, an ALJ is entitled to rely on the opinions of State agency medical consultants, because these consultants are deemed to be qualified experts in the field of social security disability. 20 C.F.R. § 416.912(b)(6), 416.913(c), 416.927(e); *see also Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Second, the ALJ properly applied the regulations in evaluating Dr. Puri's opinion by considering Dr. Puri's professional credentials, examination of Plaintiff, and clinical findings in support of the opinion, as well as the consistency of the opinion with other medical evidence in the record pursuant to 20 C.F.R. § 416.927(c). (T. 18-20.) Where, as here, an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to review each and every factor of the regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (holding that, where plaintiff challenged ALJ's failure to discuss each factor provided for in 20 C.F.R. § 404.1527[c], "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").

Accordingly, the ALJ's assessment of Dr. Puri's opinion is supported by substantial evidence, and remand is not required on this basis.

### ii.    State Agency Medical Consultant, Dr. Perll

On September 12, 2012, Dr. Perll opined that Plaintiff could stand and/or walk for six hours, sit for six hours, lift and/or carry 20 pounds occasionally, lift and/or carry ten pounds frequently, and perform unlimited pushing and/or pulling in an eight-hour workday. (T. 268.) Dr. Perll opined that Plaintiff could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs, and never climb ladders, ropes, or scaffolds. (T. 269.)

The ALJ afforded great weight to Dr. Perll's opinion, reasoning that Dr. Perll is a medical consultant and an expert in the Social Security Disability programs, and his opinion is supported by substantial evidence (citing Dr. Puri's opinion and Plaintiff's treatment records from Albany Memorial Hospital). (T. 19.) Plaintiff argues that the ALJ incorrectly stated that Dr. Perll reviewed the "entire record" because when Dr. Perll rendered his opinion on October 10, 2012, the record did not contain medical evidence submitted after that date, including the opinion and treatment notes from Dr. Voleti and treatment records from Albany Memorial Hospital. (Dkt. No. 10, at 4-5 [Pl.'s Mem. of Law].) While the ALJ may have mistakenly stated that Dr. Perll reviewed the entire record, the ALJ's assessment of Dr. Perll's opinion is nonetheless supported by substantial evidence for the following three reasons.

First, the case record was complete at the time that the ALJ issued his decision, and the ALJ considered the treatment records from Albany Memorial Hospital as well as the treatment notes and opinion from Dr. Voleti. (T. 15-20.) As discussed below in Part III.A.iii. of this Decision and Order, the ALJ properly determined that Dr. Voleti's opinion was entitled to little weight. (T. 19.) Moreover, Dr. Perll's opinion was based on substantial medical evidence

including (1) Dr. Puri's comprehensive consultative examination and opinion of Plaintiff's physical abilities and limitations, (2) an MRI examination of Plaintiff's spine showing degenerative disc disease, and (3) an x-ray examination of Plaintiff's right knee after her femoral resurfacing procedure. (*Id.*)

Second, the ALJ properly applied the regulations in evaluating Dr. Perll's opinion by considering Dr. Perll's professional credentials, expertise in the Social Security Disability programs, and the consistency of the opinion with other evidence in the record pursuant to 20 C.F.R. § 416.927(c). (T. 18-20.) When an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to discuss each and every factor of the regulation. *Atwater,* F. App'x at 70.

Third, an ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants, and these opinions may constitute substantial evidence when they are consistent with the record as a whole. 20 C.F.R. § 416.912(b)(6), 416.913(c), 416.927(e); *see also Frey ex rel. A.O.*, 485 F. App'x at 487; *Little,* 2015 WL 1399586, at *9.

Accordingly, the ALJ's assessment of Dr. Perll's opinion is supported by substantial evidence, and remand is not required on this basis.

### iii. Treating Physician, Dr. Voleti

On March 13, 2013, Dr. Voleti completed an assessment of Plaintiff's work-related physical limitations. (T. 281-82.) Dr. Voleti opined that Plaintiff could sit for 15 minutes at one time and for less than two hours in an eight-hour workday; could stand for 20 minutes at one time and for less than two hours in an eight-hour workday; and would require periods of walking in an eight-hour workday. (T. 281.) Dr. Voleti opined that Plaintiff should elevate her legs while sitting, and would sometimes require unscheduled breaks during an eight-hour workday.

(T. 281-82.)  Dr. Voleti opined that Plaintiff could rarely lift ten pounds; could never lift twenty

pounds; could rarely twist, stoop, crouch/squat, or climb; and had difficulty reaching, handling,

and fingering.  (T. 282.)  Finally, Dr. Voleti opined that Plaintiff would frequently experience

pain or other symptoms severe enough to interfere with the attention and concentration needed to

perform simple work tasks, and would likely miss about three workdays a month due to her

impairments or treatments.  (*Id.*)

On August 9, 2013, Dr. Voleti indicated that he treated Plaintiff for degenerative disc

disease, a bulging disc, osteoporosis, arthritis, and "extensive damage" to her knee.  (T. 386.)

Dr. Voleti indicated that Plaintiff's conditions do not have a cure, and that both the conditions

and the pain "can/will get much worse."  (*Id.*)  Dr. Voleti opined that Plaintiff "cannot/should

not continue to work for now nor in the future due to her medical conditions as well as her

mental issues."  (*Id.*)  Dr. Voleti noted that Plaintiff's medical conditions "caused absences,

tardiness, and being told to go home [from work] due to symptoms."  (*Id.*)

The ALJ afforded little weight to Dr. Voleti's opinion, reasoning that it is not

substantially supported by Plaintiff's activities of daily living, or the clinical, diagnostic, and

opinion evidence (citing diagnostic imaging reports from Ellis Hospital, treatment records from

Albany Memorial Hospital, and the medical opinion of Dr. Puri discussed above).  (T. 19.)  For

example, the ALJ noted that an emergency room treatment report from Albany Memorial

Hospital in August 2012 indicated that, while Plaintiff had paraspinal lumbar tenderness, she

was in no acute distress, her gait was normal, and she had no lower extremity neurological

deficits.  (T. 19.)  The ALJ noted that these findings were "not inconsistent with those of Dr.

Puri."  (*Id.*)

Turning to Plaintiff's activities of daily living, the ALJ noted that Plaintiff reported that

she could dress, bathe, and groom herself, as well as cook, clean, shop, and manage money.  (T.

16.)  Additionally, the ALJ noted that Plaintiff reported that she walks for up to half a mile daily, does laundry without assistance, prepares meals, goes shopping, goes out to dinner, reads, watches television, makes jewelry, and plays cards.  (T. 18.)  Accordingly, the Court agrees that Dr. Voleti's restrictive opinion conflicted with Plaintiff's reported activities.  *See Roma v. Astrue,* 468 F. App'x 16 (2d Cir. 2012) (finding that, in declining to afford controlling weight to a treating physician's opinion, the ALJ properly noted that the opinion that the plaintiff could not work conflicted with the plaintiff's testimony that she could perform a reasonably broad range of light, non-stressful activities at or near her home, including driving, reading, sending email, and independently performing activities of daily living).

Moreover, the ALJ properly applied the regulations in evaluating Dr. Voleti's opinion by considering his professional credentials, treatment relationship with Plaintiff, treatment notes, and citing inconsistencies between the opinion and other evidence in the record pursuant to 20 C.F.R. § 416.927(c), including Dr. Puri's opinion and Plaintiff's reported activities.  (T. 15-20.) Where an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to discuss each and every factor of the regulation.  *Atwater*, 512 F. App'x at 70.  Finally, an ALJ is not required "explicitly to reconcile every conflicting shred of medical testimony."  *See Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (finding that the ALJ was not required to reconcile two apparently inconsistent medical opinions; it was sufficient that the ALJ noted that he carefully considered the exhibits presented in evidence in reaching his decision).

For these reasons, the ALJ's assessment of Dr. Voleti's opinion is supported by substantial evidence, and remand is not required on this basis.

**B.     Whether the ALJ's Credibility Analysis Is Supported by Substantial Evidence**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 12, at 9-11 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

A plaintiff's allegation of pain is "entitled to great weight where . . . it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 [2d Cir. 1992]).  However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012).  "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record.  First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work.  Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.* (citing § 416.929[c][3][i]-[vii]).  Further, "[i]t is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms."  *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 [2d Cir. 1983]).

 Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that Plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms are not entirely credible.  (T. 18.) In making this determination, the ALJ noted that Plaintiff alleges constant and disabling pain, yet has received only conservative treatment for her pain since the alleged onset of her disability. (*Id.*)  The ALJ noted that Plaintiff's treatment for her physical impairments consisted of monthly primary care office visits for medication renewals and occasional emergency room treatment for pain, namely medication for lumbar pain and tenderness.  (*Id.*)  The ALJ further noted that (1) the evidence does not suggest that Plaintiff requires ongoing care from an orthopedic specialist, (2) no surgery has been recommended, and (3) Plaintiff is not involved in physical therapy or treatment with a pain management specialist.  (*Id.*)

 Plaintiff argues that the ALJ failed to consider reasons for Plaintiff's conservative treatment, and suggests that Dr. Voleti's statement that there was no cure for Plaintiff's conditions explained her conservative treatment.  (Dkt. No. 10, at 5-7 [Pl.'s Mem. of Law].) First, the Court notes that a plaintiff may be deemed less credible "if the level or frequency of treatment is inconsistent with the level of complaints."  SSR 96-7p, 1996 WL 174186, at *8 (July 2, 1996); *accord, Sickles v. Colvin,* 12-CV-0774, 2014 WL 795978, at *22 (N.D.N.Y. Feb. 27, 2014) (finding that the ALJ properly cited Plaintiff's conservative treatment as a reason for discounting Plaintiff's credibility).

Second, while the ALJ noted Plaintiff's conservative treatment, the ALJ did not base his credibility assessment on that one factor alone. Throughout the decision, the ALJ articulated the inconsistencies that he considered in assessing the allegations of Plaintiff's symptoms, and in determining that Plaintiff is not as limited as alleged. (T. 15-20.) For example, the ALJ considered medical evidence that was inconsistent with Plaintiff's allegations of disabling symptoms, including the medical opinions of Dr. Puri and Dr. Perll discussed above in Part III.A.i. and Part III.A.ii. of this Decision and Order. (T. 18-19.)

Additionally, the ALJ considered inconsistencies in Plaintiff's reports regarding her symptoms and activities of daily living. (T. 18.) The ALJ noted that Plaintiff reported that she performs activities such as walking for up to half a mile daily, doing laundry without assistance, preparing meals, going shopping, going out to dinner, reading, watching television, making jewelry, and playing cards. (*Id.*) The ALJ properly found that these activities "do not suggest that the claimant's condition is completely disabling." (*Id.*) *See Poupore v. Astrue,* 566 F.3d 303, 307 (2d Cir. 2009) (finding that the plaintiff's activities, including childcare, watching television, reading, using the computer, and occasionally vacuuming, washing dishes, and driving, supported the ALJ's determination that the plaintiff's alleged symptoms were not disabling); *Rivera v. Harris,* 623 F.2d 212, 216 (2d Cir. 1980) (finding that the plaintiff's report that she could "cook, sew, wash and shop, so long as she did these chores slowly and takes an afternoon rest" supported the ALJ's conclusion that the plaintiff's alleged symptoms were not disabling).

Accordingly, the ALJ's overall decision to discount Plaintiff's allegations is supported by substantial evidence even without considering Plaintiff's conservative treatment. *See Schlichting v. Astrue*, 11 F. Supp. 3d 190, 206-07 (N.D.N.Y. 2012) (finding that the ALJ's error

in making an adverse inference from a plaintiff's failure to pursue treatment was harmless error because the credibility analysis was supported by substantial evidence).  Therefore, even if the ALJ erred by not considering reasons for Plaintiff's conservative treatment, it would be harmless.

For these reasons, the Court finds that the ALJ's credibility assessment is supported by substantial evidence, and remand is not required on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: July 5, 2016
       Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge